

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

March 5, 1970

Honorable J. R. Singleton
Executive Director
Texas Parks & Wildlife Commission
John H. Reagan Building
Austin, Texas 78701

Opinion No. M-591

Re: Trinity River
Authority must pay
the Parks and Wild-
life Commission for
stream bed materials.

Dear Mr. Singleton:

You have requested our opinion as to whether your agency must charge and collect money from the Trinity River Authority of Texas, a governmental agency created by the Legislature, for sand, gravel and other materials which such agency has removed from the stream bed of the Trinity River in connection with construction of a project known as the "Livingston Dam" in Polk and San Jacinto Counties, Texas. Your file reflects that the established price under the applicable statutes is ten cents per cubic yard, and that the material removed by Trinity River Authority totals 127,908 cubic yards of such sand, gravel and other materials for an aggregate monetary amount of $12,790.80.

Attorney General Opinion WW-150 (1959) held that a navigation district could dredge without a permit if the dredging is incidental to navigation. Prior to 1911, the public was generally free without control or supervision to remove mudshell, sand, and gravel from the bottoms underlying public waters of Texas. Goar v. City of Rosenberg, 115 S.W. 653 (Tex.Civ.App. 1909, no writ); and see Opinion WW-151 (1957). The power of the Parks and Wildlife Commission to make a charge for removal of such materials from the stream bed is contained in two statutes, to-wit:

Section 1, of Articles 4053, as amended, and 4053d, Vernon's Civil Statutes, which read as follows:

"Article 4053.

SECTION 1.    Anyone desiring to purchase any of
the marl and sand of commercial
value and any of the gravel, shells
or mudshell included within the pro-
visions of this Chapter, or otherwise
operate in any of the waters or upon
any island, reef, bar, lake, bay,
river, creek or bayou included in this
Chapter shall first make written ap-
plication therefor to the Parks and
Wildlife Commission, designating the
limits of the territory in which such
person desires to operate.  If the
Parks and Wildlife Commission finds
that the taking, carrying away or
disturbing of the marl, gravel, sand,
shells or mudshell in the designated
territory would not damage or in-
juriously affect any oysters, oyster
beds, fish inhabiting waters thereof
or adjacent thereto or that such
operation would not damage or in-
juriously affect any island, reef,
bar, channel, river, creek or bayou
used for frequent or occasional navi-
gation, or change or otherwise in-
juriously affect any current that
would affect navigation, it may issue
a permit to such person after such
applicant shall have complied with
all requirements prescribed by said
Parks and Wildlife Commission.  The
permit shall authorize the applicant
to take, carry away or otherwise
operate within the limits of such
territory as may be designated there-
in, and for such substance or purpose
only as may be named in the permit
and upon the terms and conditions of
the permit.  No permit shall be assign-
able, and a failure or refusal of the
holder to comply with the terms and
conditions of such permit shall operate

as an immediate termination and
revocation of all rights conferred
therein or claimed thereunder. No
special privilege or exclusive right
shall be granted to any person, asso-
ciation of persons, corporate or
otherwise, to take or carry away
any of such products from any terri-
tory or to otherwise operate in or
upon any island, *reef, bay, lake, river,
creek, or bayou* included in this Chap-
ter. (Emphasis added.)

* * * * *

Article 4053d.

The Game, Fish and Oyster Commissioner
by and with the approval of the Governor,
may sell the marl, gravel, sand, shell
or mudshell included within this Act
upon such terms and conditions as he may
deem proper; but for not less than four
(4¢) cents per ton, and payment there-
for shall be made to said Commissioner.
The proceeds arising from such sale shall
be transmitted to the State Treasurer and
be credited to a special fund hereby
created to be known as the sand, gravel
and shell fund of the State, and may be
expended by the said Commissioner in the
enforcement of the provisions of the sand,
shell and gravel laws and in the establish-
ment and maintenance of fish hatcheries,
when provided by legislative appropriation,
and in payment of refunds provided for
in Section 7, Chapter 161, of the General
Laws of the Regular Session of the Thirty-
eighth Legislature, to counties, cities or
towns or any political subdivision of a
county, city, or town, as provided for in
Section 7, Chapter 161, of the General
Laws of the Regular Session of the Thirty-
eighth Legislature. And also providing
that the authorization of refunds on sand,

> gravel and shell shall be extended
> to include refunds to the State High-
> way Commission of money paid the
> State through the Game, Fish and
> Oyster Commission for sand, gravel and
> shell used by the State Highway Com-
> mission on public roads upon applica-
> tion for such refunds in the manner
> prescribed for cities and Counties.
> Provided further that not less than
> seventy-five per cent of the proceeds
> derived therefrom, after refunds above
> referred to have been cared for, shall
> go for the establishment and mainten-
> ance of fish hatcheries; and the sand,
> gravel, and shell fund is hereby appro-
> priated for the purpose of carrying out
> the provisions of this Act.  Said
> hatcheries to be established from time
> to time in the State of Texas by the
> Fish, Game and Oyster Commission, when
> in their judgment a suitable location
> is secured and arrangements therefor
> have been completed.  (Emphasis added.)

Article 4054, Vernon's Civil Statutes, allows cities
and counties to receive a permit for removal of these materials
without charge.  In Attorney General Opinion No. WW-759 (1959),
it was held that the provisions of 4053d, providing for mone-
tary refund of such moneys paid to the Parks and Wildlife Com-
mission by the State Highway Commission, could be legally re-
funded; consequently, this necessarily meant that the pay-
ment for the materials had to be made in the first instance.

The language in Article 4053 also states that "any-
one" desiring to purchase any of the marl and sand of com-
mercial value shall first make written application therefor
to the Parks and Wildlife Commission.  This statute, being
enacted for the public good, is susceptible to a construction
that state entities are bound thereby although not expressly
named.  49 Am. Jur. 236, States, etc., Sec. 14.  The broad
language of the above statute, its requirement that cities

and counties and their political subdivisions obtain a permit "without charge", and the specific wording as to refunds for the State Highway Commission (Article 4053d) conclusively evidence a legislative intent that all entities not exempted from payment or permit provisions must pay for sand and gravel. 53 Tex. Jur.2d 232-234, Statutes, Sec. 161. Construing these statutes in pari materia, we have thereby reached the conclusion that all governmental agencies not exempted from payment, as is the case with Trinity River Authority, are subject to the permit and cost provisions of the statute and therefore must pay for the gravel, etc., moved from a stream bed. Under the provisions of Article 4053d, the proceeds from such sales of gravel and other designated materials to Trinity River Authority should be credited to the Special Game and Fish Fund No. 9 for use therefrom in accordance with the law.

## S U M M A R Y

Trinity River Authority is required to pay the Parks and Wildlife Commission or Department for removal of marl and sand of commercial value and of any of the gravel, shell or mudshells from Texas streams in accordance with Articles 4053 and 4053d, V.C.S. Such moneys should then be credited to the Special Game and Fish Fund No. 9 of the Parks and Wildlife Department for use in accordance with the law.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Roger Tyler
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Acting Co-Chairman

Milton Richardson
Ray McGregor
Ivan Williams
Steven Hollahan

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant